## MRS. MARIA GRUBB v. C. M. McAFEE.

### No. 2691. Decided May 21, 1919.

**1.—Oil and Gas—Lease—Implied Obligation—Abandonment.**

A lease for the term of twenty years for the purpose of prospecting, drilling, or operating for oil and gas, for a royalty to the lessor, was conditioned that the lessee should commence drilling a well within twenty days and complete same to the depth of three hundred feet. The lessee completed such well, producing oil in paying quantities for a short time only, and sunk two other wells without result. He then removed his machinery from the premises, and for nine years conducted no other operations thereon. The lessor sued for cancellation of the lease, alleging that it had been abandoned by lessee. Held:

(1) The completion of the one well required by the lease did not confer on the lessee an absolute right to develop oil under his lease at any time in his election within the term of twenty years.

(2) In such lease for royalty there is an implied obligation that the lessee will fully develop the possibilities of the land for oil production.

(3) But the contract having fixed conditions on which the lease should be avoided (failure to sink one well as therein provided), the default of the lessee in performance of his implied obligation to further develop was not to be treated as a condition subsequent for forfeiture of his lease, but merely as a breach of his contract, giving the lessor an action for damages.

(4) The right to cancel the lease could be sustained only on the theory of its abandonment by the lessee; but the evidence here considered is held sufficient to sustain a finding by the trial court that the lease was so abandoned. (Pp. 528-536.)

**2.—Cases Reviewed.**

Benavides v. Hunt, 79 Texas, 396; J. M. Guffey Pet. Co. v. Chaison Townsite Co., 48 Texas Civ. App., 555; Texas Co. v. Daugherty, 107 Texas, 233; National Oil & Pipe Line Co. v. Teel, 95 Texas, 591; Johnson v. Gurley, 52 Texas, 222; Harris v. Rather, 134 S. W., 755; Wade v. Madison, 206 S. W., 119; cited with approval. (Pp. 531-534.)

Error to the Court of Civil Appeals of the Second District, in an appeal from Clay County.

Mrs. Grubb sued McAfee and obtained judgment. Defendant appealed, and plaintiff, appellee, obtained writ of error on a judgment reversing and rendering for defendant. 164 S. W., 925.

*Wantland & Parrish,* and *Carrigan, Montgomery & Britain,* for plaintiff in error.

Where a lease contract is made for the development of minerals on certain lands, and from the whole contract it appears that the consideration for its execution by the grantor was future royalties to be received from development by the lessee, and the lessee fails to use reasonable diligence to develop the minerals from such land, then the lease is subjected to be forfeited. Great Western Oil Co. v. Carpenter, 95 S. W., 57; Guffey Petroleum Company v. Oliver, 79 S. W., 891; Fed-

eral Oil Co. v. Western Oil Co., 112 Fed., 376; Hodges v. Brice, 74 S. W., 590; Emery v. League, 72 S. W., 606; Roberts v. McFadin, 74 S. W., 105; National Oil Co. v. Teel, 67 S. W., 545; Beauchamp v. Runnells, 79 S. W., 1106; Witherspoon v. Staley, 156 S. W., 557; Thornton, Law Relating to Oil and Gas, secs. 126, 127, 128, 129, 130; Elk Fork Oil & Gas Co. v. Jennings, 84 Fed., 839.

Where the owner of land grants a mineral lease for oil and gas providing in the written lease that it is granted for the only purpose of developing same for oil and gas for twenty years, and the lessee thereunder also agrees in writing to begin developments within twenty days from the date of the contract and to prosecute the work with due diligence, and the lessee drills a well producing a small quantity of oil at a shallow depth, and said well does not produce any oil within a short time after it is completed, and where the developments on the demised premises cease within a year after the execution of the lease, and the lessee removes all his machinery and appliance from the land leased and does not work upon the premises for nine years before the institution of the suit, said lease is then voidable at the instance of the lessor, and the lessee by drilling of the unproductive wells and by the cessation of developments for nine years can acquire no vested rights in the demised premises for the full term of twenty years from the date of the lease. Guffey v. Oliver, 79 S. W., 888; Steelsmith v. Gartlan, 44 L. R. A., 107; Huggins v. Daily, 48 L. R. A., 320; Thornton on Oil and Gas, 2d ed., p. 211; secs. 141, 139, and also secs. 162, 170; also, authorities above cited.

*Taylor & Humphrey,* for defendant in error.

Where a contract is made upon a stated consideration, and that consideration is fully performed, the rights under said contract vest, and are not subject to forfeiture by a failure to perform acts not mentioned in said contract, and not made a part thereof; i. e., the contract expressly stating all the conditions thereof, together with the consideration, will not be forfeited by a failure to perform implied conditions. O'Neal v. Sun Company, 123 S. W., 172; Benavides v. Hunt, 79 Texas, 397; Southern Oil Co. v. Colquitt, 69 S. W., 169-170.

Abandonment includes both an intent to abandon coupled with external acts evidencing such intent, and the question of abandonment is one of fact to be determined by the jury from all the facts in the case. 1 Cyc., p. 4 and p. 8.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

On August 26, 1903, Thomas Grubb executed to defendant in error, C. M. McAfee, a written contract, as follows:

"Know all men by these presents, That I, Thomas Grubb, of the County of Clay and State of Texas, for and consideration of one dollar to me in hand paid by C. M. McAfee, the receipt of which is hereby

acknowledged, and other consideration, have granted, demised and let to said C. M. McAfee, his executors, administrators and assigns, for the sole and only purpose of prospecting, drilling or operating for and in petroleum, oil, gas, coal or minerals, for the term of twenty years from the date hereof, and as long thereafter as petroleum, oil, gas, coal or minerals are found in paying quantities, all that certain tract or parcel of land situated in Clay County, Texas, and described as follows, towit: Here follows description. I, the said lessor, am to have one-tenth of all the oil produced and saved from said land, delivered free of cost in tanks or pipe line by the said lessee, and the lessee is to market the above mentioned oil together with his, and settlement for same to be made monthly. In case gas, coal or other minerals are found on said land, the lessee is to pay the lessor such a royalty on the product which is mined as is customary to be paid. No well shall be drilled within one hundred feet of any building now on the premises, without the consent of the lessor, and the lessee shall not unnecessarily disturb the crops, fence or improvements on said land, but the said lessee shall have full right, which is hereby granted to him, to enter upon and remain on the above described premises at any time for the purpose of prospecting, mining, drilling or operating thereon, to have the right of way to and from the place of drilling or operating, to have the use of sufficient water, gas, coal or oil for operating thereon, to have exclusive right to erect, construct and operate on said land all necessary equipment for pumping, piping, storing, refining and operating generally for oil, gas, coal or other minerals. The lessee is to use and occupy so much only of the surface of said land as may be necessary to conduct the work and operations above mentioned. And the lessee is to pay all damage done to the growing crops that are now on the said land, which may be caused by his erection of derricks or other operations. The said lessee shall have the right to remove at any time any and all machinery, oil well supplies, pumping equipment or appurtenances of any kind, belonging to said lessee. The said lessee is to begin the drilling of a well within thirty days from the date hereof, and is to prosecute the work with due diligence until said well is completed to the depth of 300 feet, unless oil is found in paying quantities at a less depth. And failing to drill said well, as above provided, shall render this instrument of writing null and void as to all parties hereto.

In Witness Whereof, I hereunto set my hand, this the 26th day of August, A. D. 1903.

Thomas Grubb."

Defendant in error, McAfee, begun to drill a well on the land within thirty days from the date of the contract and prosecuted the work with diligence until oil was found at a depth of about two hundred and fifty feet, on which a royalty was paid to Thomas Grubb for about sixty days, when the well ceased to produce. Two other wells were sunk by

defendant in error on the land within the next twelve months, without finding oil, and thereupon he removed all machinery, equipment and supplies from the land, and, for some nine years had conducted no prospecting or drilling or producing operations on the land, when plaintiff in error, Mrs. Maria Grubb, as the survivor of the community estate of Thomas Grubb and herself, to which estate the land belonged, brought this suit against defendant in error, averring the above facts, all of which were proven by uncontradicted evidence, and further averring that when defendant in error completed his last well on the land he abandoned his contract, and refused to comply with his obligations, and plaintiff in error sought judgment cancelling the contract.

Defendant in error testified that in addition to the three wells which he sunk on the land he drilled two others within a short distance; that none of them, save the first, contained any oil; and, that he made a thorough test, without success. Defendant in error did not deny that he intended to abandon the contract when he ceased to drill on the land and did not testify to any desire or purpose to resume operations.

The trial court rendered judgment for plaintiff in error, cancelling the contract, and this judgment was reversed by the Court of Civil Appeals, who rendered judgment for defendant in error.

The Court of Civil Appeals was of the opinion that the contract had the effect to invest defendant in error with the right to develop the land, at his election, at any time during the full term of twenty years, after he had completed a well, begun within the prescribed thirty days, to a sufficient depth to discover oil in paying quanties, and that such right was unaffected by defendant in error's subsequent intention and acts. 164 S. W., 925.

Section A of the Commission of Appeals has recommended that the judgment of the Court of Civil Appeals be reversed and that of the District Court be affirmed, having concluded that there was an implied obligation to continue the work of exploration, for, and production of, the minerals, and that this obligation was not in the nature of a covenant but was a condition subsequent, the breach of which operated to forfeit the contract.

We approve the conclusion of the Commission that the law implied the obligation from defendant in error to exercise reasonable diligence to continue drilling and mining operations on the land after oil was encountered in the first well, but we do not agree that the terms of the contract made this obligation a condition subsequent and authorized a forfeiture of the contract for non-compliance with the obligation. We think that the cancellation of the contract, as adjudged by the trial court, on the facts alleged and proved, can be sustained only by reason of the abandonment of the contract by defendant in error.

It is to be noted that the written contract expressly required nothing of defendant in error save to begin a well within thirty days and to continue to drill it until oil was found in paying quantities or until a depth of 300 feet was reached. And the Court of Civil Appeals deter-

mined that the law required no more of defendant in error, in order to acquire a vested right in the land for twenty years. To uphold that construction of the contract would require us to assume that the owner of the land intended to grant such a vested right, not only without benefit to himself, but even to his positive detriment. The consideration for this contract to the owner consisted alone in royalties on the minerals to be produced during the term of the contract, unless we can reasonably assume that it would benefit him to have his land proven as containing valuable oil deposits, though no oil was produced therefrom for a term like twenty years. No assumption of that sort can be reasonably indulged. It would ignore the very nature of oil and gas, which were the minerals first mentioned in the contract. For, the natural result of stopping the production of oil or gas, from the tract on which it was discovered in paying quantities for such a period of time would be to invite its drainage from adjacent tracts, to say nothing of the danger of the oil's migration.

It is because of such considerations that the rule has become settled that "even in the absence of an express covenant, when a lessee undertakes to develop oil or gas land on a rental or royalty basis, and the contract does not specify the number of wells to be drilled, there is an implied obligation that he will fully develop the land with reasonable diligence." 18 R. C. L., sec. 114. The Supreme Court of Iowa declares that all the authorities unite in this holding. Price v. Black, 126 Iowa, 306, 101 N. W., 1056. See, also, 27 Cyc., 728; Black on Rescission and Cancellation, sec. 471; Brewster v. Lanyan Zinc Co., 72 C. C. A., 213, 140 Fed., 801; Note, 20 Ann. Cases, 1167, 1168.

The opinion of the Commission of Appeals deals well with this subject in saying: "No express provision is made in the lease contract herein for operation or further development in the event of the discovery of minerals in paying quantities. The evident intent of the parties in the execution of the instrument being the production of such minerals, possible only through operation and development, the obligation to operate with reasonable diligence and to reasonably develop the land, will be implied in order to effectuate this intent."

In Benavides v. Hunt, 79 Texas, 396, 15 S. W., 396, it was held that though there was no express agreement for the operation of a mine, under a contract granting a right to mine for coal, for the full period of fifty years, yet if the land was found to contain coal which could be profitably worked, the law implied an agreement to that effect.

And, in J. M. Guffey Pet. Co. v. Chaison Townsite Co., 48 Texas Civ. App., 555, 107 S. W., 612, it is said: "While the original lease contract did not specify the number of wells that appellant should sink upon the property, and did not expressly require the sinking of offset wells to protect the land from drainage, from the nature of the contract an implied obligation rested upon appellant to use reasonable diligence and care to develop and protect the property, and this obligation

required it to sink as many wells as the exercise of such diligence and care would suggest under the circumstances."

It is plain that the contract here amounts to a grant of the right or option to prospect upon the land for oil, gas, and other minerals, and to reduce those minerals to possession and ownership. Texas Co. v. Daugherty, 107 Texas, 233, L. R. A., 1917F, 989, 176 S. W., 717; National Oil & Pipe Line Co. v. Teel, 95 Texas, 591, 68 S. W., 979.

The contract specifies as the sole cause of forfeiture of this right a failure to drill the first well within the time or to the depth there specified, and the difficult question in this case is, whether in the face of this express stipulation of the cause of forfeiture we should imply another based on the breach of an obligation not itself expressed in the contract?

Johnson v. Gurley, 52 Texas, 222, was a case where the owner of land leased to a tenant, rent free, under a written contract expressly providing that the tenant should use the land for farming and pasturage purposes, but should not sell growing timber. Suit was brought to forfeit the lease because of the tenant's breach of the stipulation against the sale of the growing timber. In determining that such breach furnished no ground of forfeiture, the court said: "A covenant is an agreement duly made between the parties to do or not to do a particular act. (Taylor's Land. and Ten., sec. 245.) For breach of mere covenant the lessor has no right of re-entry, unless, as is not the case here, there is an express clause in the agreement to this effect, but has the right to sue for damages only. (Taylor's Land. and Ten., secs. 290, 291; 1 Wash. on Real Prop., 3d ed., marg. p. 320; Dennison v. Read, 3 Dana (Ky.), 586; Brown's Administrators v. Bragg, 22 Ind., 123.)

A condition is a qualification annexed to an estate by the grantor, whereby it may be created, enlarged, or defeated upon an uncertain event. (Taylor's Land. and Ten., sec. 271; 1 Wash. on Real Prop., 3d ed., marg. p. 316.) The lessor may, without an express clause to that effect, take advantage of a breach of condition by re-entry or ejectment. (Taylor's Land. and Ten., sec. 291.)  . . .

In case of doubt as to the true construction of a clause in a lease, it should be held to be a covenant, and not a condition or limitation, as the law does not favor forfeiture. (1 Wash. on Real Prop., 3d ed., marg. pp. 319, 329; Taylor's Land. and Ten., sec. 273; 44 Kent's Comm., marg. p. 129; Wheeler v. Dascomb, 3 Cush., 288.)

We are of opinion that the clause under consideration is neither one of limitation nor condition, but equivalent simply to a covenant or agreement between the parties, to the effect that the lessors agreed to give to the lessee the right to the use of such timber as might be necessary for the purposes of the lease, and the lessee agreed not to cut and sell the growing timber. (Spear v. Fuller, 8 N. H., 174; Wheeler v. Dascomb, 3 Cush., 285; Taylor's Land. and Ten., secs. 279, 489.) The breach of this covenant did not forfeit the estate of the defendant

under the contract, or give the plaintiff the right to sue him otherwise than for damages."

In Harris v. Rather, 134 S. W., 755, in which a writ of error was denied, many Texas cases are reviewed, wherein forfeitures of contracts have been denied for breaches of obligations furnishing the essential considerations of the contracts, because such obligations could not rightly be construed otherwise than as covenants instead of conditions. The ground of that decision, as applied to the facts of that case, is fairly summarized by the following portion of Judge Rice's good opinion, viz.: "If, as insisted by appellant, the agreement on the part of appellee to begin the erection upon the land conveyed within twelve months of a $10,000 residence was a part of the consideration for the conveyance, and if this consideration had been recited in the deed, still we do not think that this would have given appellant a right to rescind. The grantor did not make or attempt to make the failure on the part of his grantee to erect said building a cause for forfeiture or rescission of the contract. . . . The appellant had the right to have inserted such a clause, but, having failed to do so, it seems to us the presumption would obtain that he intended to rely upon his contract, a breach of which would merely authorize a suit for damages."

In Kachelmacher v. Laird, 92 Ohio St., 333, 110 N. E., 935, the Supreme Court of Ohio said of an implied obligation to continue drilling under an oil lease: "Even if there be such implied covenant, as contended by counsel for the lessors, it can not be made the ground of forfeiture. Under the express terms of this lease the right to declare a forfeiture arises upon the failure of the lessee to drill or pay rental, and, hence, forfeiture can be enforced only if the lessee neither drills nor pays the stipulated rental in accordance with the terms of the lease. Such cause of forfeiture being expressly mentioned, none other can be implied."

The reason for this holding has been set out by the same court in the earlier case of Harris v. Ohio Oil Co., 57 Ohio St., 131, 48 N. E., 506, in these words: "It is strongly urged, that it is inequitable for the lessee to hold on to his lease and still fail to so operate the premises as to produce reasonable results, and that he should either reasonably operate the premises or get off and permit his lease to be forfeited. The answer is, that while there is an implied covenant to reasonably operate the premises, there is no implied or express covenant to get off and forfeit his lease for a breach of such covenant.

The lease in question provides for a forfeiture for the failure to comply with the conditions, or to pay the cash consideration in the lease mentioned, at the time and in the manner agreed; but the implied covenant, to reasonably operate the premises, is not mentioned in the lease, and is therefore not included in the causes of forfeiture. Some causes of forfeiture being expressly mentioned, none other can be implied. McKnight v. Kreutz, 51 Pa. St., 232.

The remedy for a breach of the implied covenant to reasonably op-

erate the premises is therefore not by way of a forfeiture of the lease in whole or in part, but must be sought in a proper action for a breach of such covenant.    Blair v. Peck, 1 Pennypacker, 247."

The Supreme Court of Illinois followed the holding in Harris v. Oil Co., on facts strikingly like those here, when it is said in Poe v. Ulrey, 233 Ill., 65, 48 N. E., 50: "Counsel for appellants insist that there was an implied agreement that the lessee would drill wells to reasonably develop the farm for the production of oil and gas, and that the lease could be cancelled by the court and the rights under it forfeited for a failure to do so, and that the lease might be forfeited for a failure to drill the well although compensation was agreed upon.    The argument would have greater force if the lease had not contained a provision that it could be forfeited for a failure to complete a test well on the block of leases before the first day of May, 1905.    That agreement would imply an exclusion of other grounds of forfeiture and the agreement for compensation effectually excludes a forfeiture not stipulated for.    The remedy for the breach of that contract would be by an action for damages.    Harris v. Ohio Oil Co., 48 N. E. Rep., 502."

In line with Harris v. Oil Co. are Core v. Petroleum Co., 52 W. Va., 280, 4 S. E., 128; Carr v. Light Co., 33 Ind. App., 5, 70 N. E., 552; McClendon v. Busch-Everett Co., 138 La., 730, 70 So., 781; Vanatta v. Brewer, 32 N. J. Eq., 270.

The Dallas Court of Civil Appeals said in Wade v. Madison, 206 S. W., 119: "It seems settled, however, that ordinarily breaches of express covenants, much less those that arise only by implication, do not forfeit the right of possession or confer the right of re-entry, in the absence of an express provision to that effect in the contract.    Johnson v. Gurley, 52 Texas, 222; Ewing v. Miles, 12 Texas Civ. App., 27, 33 S. W., 235."    This statement is fully supported by the 18 A. & E. Enc. of Law, on page 369, as follows: "The common-law rule is well settled that a breach by the lessee of his covenants or agreements in the lease does not work a forfeiture of the term in the absence of an express stipulation in the lease or the reservation of a power of re-entry in case of such breach.    The general remedy of the lessor in such a case is merely by action for the recovery of damages.    This rule applies with regard to implied covenants; express covenants to pay rent; covenants to pay taxes; in case of a mining or oil lease, covenants to explore for minerals or oil," etc.

Thornton's Law of Oil and Gas, vol. 2, sec. 866, announces the general rule to be that "the remedy for a breach of an implied covenant is not by way of forfeiture of the. lease, in whole or in part, but by an action for damages caused by its breach."

It is a recognized rule that additions ought not to be made to contracts by implication beyond that which is necessary.    And, we see no reason to doubt that full protection may be accorded the owner with respect to the enforcement of the implied covenant of the lessee to use due diligence in mineral development, without making a breach of the

covenant a ground of forfeiture. In the first place, the party obligated to drill can not abandon his contract without subjecting same to cancellation on that ground. And, the power of a court of equity in decreeing specific performance, is far-reaching, such power having been exercised in a proper case to compel either performance or abandonment by a lessee of an oil lease, within a very few days. Kleppner v. Lemon, 176 Pa., 511, 35 Atl., 109, 198 Pa., 581, 48 Atl., 483.

There can be no doubt that defendant in error's rights under his contract were of such a nature as to be lost by abandonment.

On facts similar to those disclosed by this record, without contradiction, it was held in New York that a contract, very like that between these parties, was abandoned as matter of law. To quote from the opinion: "This lease was for the term of fifteen years from its date, 'or as long as oil is found in paying quantities.' It further provided that the lease should be null and void unless Galletts should commence to drill a well within three months from the date of the lease, prosecute the same diligently and bore the same to the depth of 1200 feet, unless oil was sooner found in paying quantities. During the year 1893 Galletts commenced drilling the well in pursuance of this lease and finished it to the requisite depth in 1894, but found no oil in paying quantities. He paid the lessor ten dollars a month until the well was completed. Oil not having been discovered, in 1894 Galletts took away his derrick, machinery and rigging which he had used in drilling the well, leaving only the casing which had been put in to shut off the water while he was drilling the well. Galletts did nothing further for eleven years, and made no claim that his lease was valid.

In July, 1905, Galletts entered upon the plaintiff's farm, put down another well, and found oil in paying quantities. It will be observed that this was eleven years after he had abandoned the premises, and more than eight months after the contract with the plaintiff.

The court submitted to the jury the question for them to determine whether Galletts had abandoned the lease. I think this was error. The facts were not in dispute, and as matter of law the lease had terminated long before the contract made with the plaintiff. When Galletts took away his machinery and all the implements which were necessary for the prosecution of the work under the lease, and after having drilled one well and found no oil, these acts on his part indicated that he had abandoned the project, and this is especially true when the work was not resumed again for eleven years." Conkling v. Krandusky, 127 App. Div., 763-4, 112 N. Y. Supp., 13.

The Supreme Court of West Virginia, in Sult v. Oil Co., 63 W. Va., 329, 61 S. E., 312, laid down very clear rules relative to the abandonment of oil contracts. The opinion in that case says: "Whether a lease has been terminated by abandonment on the part of the lessee and the acceptance of, or re-entry upon, the premises by the lessor, is a question of intention. Though a lease, so terminated, is said to have come to its end by operation of law, the legal result arises from the

acts of the parties. The intention, on the part of the lessee, to abandon, and, on the part of the lessor, to resume possession of the premises on his own account and treat the lease as having been surrendered, ascertained from their acts and conduct, is the test."

Applying the test stated to the facts of this case, we have no doubt of the correctness of the judgment of the District Court in ordering the cancellation of the contract here involved on the ground of abandonment, and, for that reason, the judgment of the Court of Civil Appeals is reversed, and the judgment of the District Court is affirmed.

*Reversed and judgment of District Court affirmed.*