**TEXAS CO. v. CURRY et al.　(No. 9420.)**

(Court of Civil Appeals of Texas. Fort Worth.
Jan. 15, 1921. Rehearing Denied
Feb. 19, 1921.)

1. Mines and minerals ⊕⇒78(2)—Lessors held
not entitled to claim termination of lease
while lessee continued diligently drilling un-
finished well.

Where operations for the drilling of a well
were begun by an oil and gas lessee within the
seven-year period required by the lease, and
the lessor specifically enjoined on the lessee
the duty to continue such operations until the
well was finished, the lessors could not say
that the lease terminated at the end of the
seven-year period, where it required until after
such period to finish the well by the exercise
of due diligence on the part of the lessee.

2. Mines and minerals ⊕⇒78(1)—Lessee under
implied obligation, after continuing lease, to
exercise diligence.

An oil and gas lessee, by its election to
continue the lease in force after the stipulated
seven years within which it was required to
drill for oil, was under an implied obligation to
exercise reasonable diligence further to develop
all the different tracts whenever the conditions
reasonably required development to accomplish
the purpose of the lessors in executing the
lease, i. e., to realize profit from any oil to be
found in the land.

3. Mines and minerals ⊕⇒78(1)—Lessee under
duty to exercise diligence for development
prior to expiration of lease period.

Under an oil and gas lease providing that,
if the lessee sank a well and discovered oil or
gas within the limits of time provided, the lease
should be in effect for 20 years from discovery,
the lessee owed an implied duty to exercise
reasonable diligence for further development
prior to expiration of the 20-year period speci-
fied, and if it failed to exercise such diligence
with respect to any one of the several tracts
embraced in the lease, and thus decided to
abandon it as to such tract, the lease, perhaps,
might be canceled at the instance of lessors
as to such tract on the theory of abandonment,
but not of forfeiture.

4. Mines and minerals ⊕⇒77—Oil lessors who
repudiated lease cannot invoke theory of
abandonment by lessee.

Oil and gas lessors, who expressly repudi-
ated the lease and forbade any development of
the tract, are not in a position to invoke against
the lessee as ground for cancellation the theory
of abandonment by lessee.

5. Mines and minerals ⊕⇒78(1), 79(1)—Stip-
ulations of lease as to payment of rentals and
drilling held not covenants but conditions sub-
sequent.

Stipulations in an oil and gas lease relative
to payment of rentals and drilling operations
*held* not covenants by the lessee, but conditions
subsequent, performance of which was option-
al, but nonperformance of which would result
in termination of the interests conveyed, wheth-
er such rights amounted to an interest in the
title to the land or merely a right to take pos-
session for exploration or development and
to own a proportion of the oil and gas pro-
duced.

6. Mines and minerals ⊕⇒77—Oil lessors claim-
ing forfeiture must show right plainly.

Oil and gas lessors invoking against lessee
the harsh remedy of forfeiture to obtain relief
must show their right thereto plainly from the
express terms of the lease itself, and not by
implication or strained construction.

Error from District Court, Stephens Coun-
ty; W. R. Ely, Judge.

Suit by A. J. Curry and others against the
Texas Company. From judgment for plain-
tiffs, defendant appeals. Judgment reversed,
and judgment rendered for defendant.

Harry Tom King, of Abilene, and A. B.
Flanary and A. S. Hardwicke, both of Dallas,
for appellant.

Turner & Seaberry, of Eastland, Bateman
& Evans, for appellees.

DUNKLIN, J. The issues involved in this
case are substantially the same as those
determined in the case of McCallister v.
Texas Company, which was disposed of by
this court as shown in 223 S. W. 859.

A. J. Curry and others instituted this suit
in form of trespass to try title to recover
title and possession of a tract of 400 acres
of land situated in Stephens county, but, as
shown by special allegations in plaintiffs'
petition, the chief purpose of the suit was
to cancel an oil and gas lease which was
executed on August 19, 1911, by John Black
on that tract and three others; Black then
owning the fee-simple title to all four of
these tracts. A lease was given to the Texas
Company, a private corporation, and there-
after plaintiffs in the suit acquired John
Black's title to the tract in controversy. The
lease is copied in full in the opinion in that
court rendered in the former case. As there
shown, it was executed for a recited cash
consideration of $10 paid, and continued for
a period of two years with privilege given
to the lessee of so extending it as to cover
a period of seven years in all, by the pay-
ment of certain rentals therein specified, or
by the beginning of operations for the drill-
ing of a well for oil or gas.

It was alleged in plaintiffs' petition that
the defendant had paid all the rentals pro-
vided for in the lease for the full period of
seven years from and after its date, but that
the defendant did not begin the drilling of a
well on the land or attempt to develop its
mineral resources within the seven-year
period, and by reason of its failure to do so,
that the lease had been forfeited, and plain-

⊕⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

tiffs prayed for a cancellation thereof as a cloud on their title.

The seven-year period stipulated in the lease terminated August 19, 1918. The case was tried without a jury and the trial judge filed findings of fact and conclusions of law. According to the findings of fact, the 400-acre tract in controversy is situated about 1½ miles south of the town of Breckenridge; another of the four tracts covered by the John Black lease is situated about 6 miles south of the tract in controversy; another about 12 miles south of that tract; and another, consisting of 265 acres and known as the "Winston tract," is situated about 8 miles east of the tract in controversy. The following are additional facts found by the trial judge.

"(6) Prior to August 19, 1918, the defendant did not commence the actual drilling of a well on any of said lands, nor has any drilling operations ever been begun on the 400 acres in controversy in this suit.

"(7) In the latter part of July, 1918, the Texas Company made a location for a well on the 265 acres, known as the Winston tract, and erected a derrick thereon but did not begin the drilling of a well or 'spud in' a well until some time in the month of September, 1918, which well was completed in the month of May, 1919, as a dry hole, but which produced after being shot shortly after until the 19th day of October, 1919, 754.08 barrels, and was producing October 24, 1919, about 2 barrels per day.

"(8) After the completion of said well, the said defendant, the Texas Company, thereafter erected another derrick on said 265 acres, but has not made any further effort to develop the same.

"(9) After the defendant began drilling the first well on the said Winston tract, it continued said drilling with due diligence until the completion thereof.

"(10) Development for oil and gas in Stephens county, at the present time, is intensive, and production has been found within 400 yards of said 400-acre tract. * * *

"I find that on August 20, 1918, the owners of the land in this suit demanded of the Texas Company a release of the John Black mineral lease, described in these findings, upon their land, contending that said lease had expired and was no longer a valid lease upon the lands owned by plaintiffs; that the Texas Company contended, in response to said demand, that the lease was valid and in force, and by reason thereof plaintiff instituted this suit to cancel and release said lease, on the 25th day of June, 1919.

"I find that after plaintiffs had entered this suit defendant, in good faith, offered to drill an oil well and develop the land of plaintiffs, which offer was by plaintiffs refused.

"I find that from the evidence submitted upon the trial of this cause that the terms 'commence operations for the drilling of a well for oil or gas,' as contained in paragraph 6 of the John Black lease, and the lease involved in this suit, means the preliminary operations and preparatory operations for the actual spudding in of a well, that is, a location, hauling timber upon the ground, securing water, erecting the derrick, and things of that character.

"I find that location for a well upon the Winston tract of land, which is covered by the John Black lease, was made July 13 or 14, 1918, that actual drilling started on this well September 14, 1918, but during the six weeks prior to the actual starting of drilling defendant was at work upon said lease and well, getting a water supply for drilling operations and building the derrick; that the derrick was completed prior to August 12, 1918.

"I find that a second well, known as John Black well No. 2, was located on the Winston tract of land June 25, 1919; that on October 1, 1919, the Texas Company began the building of a rig on John Black well No. 2, and the rig is not yet completed."

The conclusion of law filed by the trial judge is as follows:

"The court concludes as a matter of law that said lease expired by force of its own terms on August 19, 1918, and is of no further force and effect."

Under the facts recited, the proper disposition of this appeal depends upon the construction to be given these two provisions in the lease:

"(6) Under penalty of forfeiture of the rights and estates hereby granted operations for the drilling of a well for oil or gas shall be begun within two years from the time of final execution and delivery of this contract, and if so forfeited, the rights and liabilities of both parties shall thereupon be ended.

"Forfeiture may, however, be saved by the grantee, and the vitality thereof be continued and maintained, notwithstanding operations be not begun within the proper time limit, provided only that for the privilege of delay in such beginning from time to time the grantee may pay as hereinafter provided twenty-two dollars per quarter, for a period of not exceeding seven years, from delivery hereof. Operations upon a well begun shall be prosecuted with diligence, unavoidable accidents and contingencies only excepted, and when a well is begun, it shall be sunk to a depth of 1,500 feet unless oil or gas be sooner developed in paying quantities, but a well which may be lost or spoiled may be continued at another location, and to be considered the same as the original.

"After a well is begun, no further payments, in respect to delay shall be due, and for every well drilled, there shall in all events be secured from forfeiture an area of 200 feet square, with the well in the center, together with 160 acres of land adjoining, said acreage to be precisely designated by the grantee, if the grantor so demands.

"It is expressly agreed, however, that, notwithstanding the provisions of section 6, that considering the fact that this contract is one of several between the grantee and different parties applying to lands in the same locality, and it being the desire of all concerned to develop the mineral possibilities of such locality if the drilling of a neighborhood well shall be begun by said grantee within two years from final execution and delivery hereof, the time limits

and other obligations defined in section 6, shall be so extended as that duty under the same shall not arise either as to drilling or payment until one year from the completion of such neighborhood well. * * *

"(8) In case the grantee or successors or assigns of such should sink a well or shaft, and discover either oil, gas or other minerals within the limits of time, or the extension of such, as herein provided for, then this conveyance shall be in full force and effect for twenty years from the discovery of said product, and as much longer as such minerals are produced in paying quantities."

[1] Paragraph 6 of the lease contains the only provisions for forfeiture. As held in the former case, the acts done by the appellee on one of the tracts covered by the lease constituted a beginning of "operations for the drilling of a well for oil," within the meaning of paragraph 6 of the lease. After those operations were begun, the lessee was specifically required by the provisions of paragraph 6 to prosecute those operations with diligence, which the trial judge found was done. Since such operations for the drilling of a well were begun within the seven-year period, and since the lessors specifically enjoined on the lessee the duty to continue such operations until the well was finished, they were in no position to say that the lease terminated at the end of the seven-year period, in view of the trial court's findings it required until May, 1919, to finish the well by the exercise of due diligence. In other words, the lessors could not claim a termination of the lease on August 19, 1918, while the lessee was compelled to continue the operations already begun until the well was completed in May, 1919.

[2] Those provisions for forfeiture are confined to the defaults mentioned, occurring within the seven-year period. They do not purport to apply to any failure of the lessee to do any act after a well, begun within the seven-year period, is prosecuted to completion with reasonable diligence and oil is found, whether so completed during or after expiration of that period. However, notwithstanding the absence of such a stipulation, and aside from the provisions of paragraph 8, the lessee, by its election to continue the lease in force, was under an implied obligation to exercise reasonable diligence to further develop any and all the different tracts, whenever the conditions reasonably required the same, in order to accomplish the purpose of the lessors in executing the lease, to realize a profit from any oil to be found on the land. Grubb v. McAfee, 109 Tex. 527, 212 S. W. 464; 1 Thornton on Oil & Gas, § 91.

[3, 4] Even under the provisions of paragraph 8, the lessee owed the same implied duty to exercise reasonable diligence for further development prior to the expiration of the twenty-year period therein specified. And if it failed to exercise such diligence with respect to any one of the several tracts embraced in the lease, and if it could be further shown by evidence that the lessee had decided to abandon the lease as to that tract, perhaps the same might be canceled as to that tract, on the theory of abandonment, but not on the theory of forfeiture. Grubb v. McAfee, 109 Tex. 527, 212 S. W. 464; Decker v. Kirlicks (Sup.) 216 S. W. 385; 1 Thornton on Oil & Gas, § 181. But the issue of abandonment was not presented in the case; nor were plaintiffs in a position to invoke it as to the land in controversy, since they expressly repudiated the lease and, in effect, forbade any development of that tract. McCallister v. Texas Co., 223 S. W. 859, and authorities there cited.

Furthermore, as shown by the findings and conclusions of the trial judge, the forfeiture declared was not upon the theory of abandonment.

It may be noted further in this connection that while plaintiffs, in their pleadings, in general terms alleged that defendant had wholly failed to develop any of the land as required by the lease, yet there was no allegation nor findings by the trial judge that the oil discovered in the well drilled on the Winston tract was not in paying quantities; nor was the discovery of oil in such quantities required by the terms of the lease, as a condition for the avoidance of a forfeiture.

Paragraph 8 of the lease does not provide for a forfeiture at all. It is a stipulation for the lessee's benefit and specifically gives the right of extension of the lease for a period of twenty years from and after the discovery of oil and as much longer thereafter as oil is produced in paying quantities, if the lessee should sink a well and discover oil, gas, or other minerals within the limits of time or extensions thereof provided for in the lease. Whether or not the lease is effective for twenty years from the expiration of the seven-year period mentioned in the lease was not an issue in the case. Even though it should be said that the continuation of the lease after the expiration of the seven-year period was dependent alone upon the provisions of paragraph 8, still, for the reasons given in the former case, the period of time allowed by paragraph 6 for completion of a well begun within the seven-year period would include such a length of time after the expiration of that period as was reasonably required to complete the well.

It is immaterial whether the lease should be construed as having the legal effect of a conveyance of an interest in the title to the land itself, or merely a right to prospect for oil and to develop the same if found, and when found to take a certain portion of it. See National Oil & Pipe Line Co. v. Teel, 95

Tex. 586, 68 S. W. 979, and Texas Co. v. Daugherty, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989.

[5] The stipulations relative to payment of rentals and drilling operations were not covenants on the part of the lessee, but were conditions subsequent, the performance of which was optional with the grantee, but the nonperformance of which would result in a termination of the interests conveyed by the instrument, whether such rights amounted to an interest in the title to the land, or merely a right to take possession of it for the purpose of exploration and development and to own a stated proportion of the oil and gas produced. And if those conditions were performed by the grantee, it cannot be said that there was in any sense a forfeiture or termination of the interest conveyed, whatever may be the proper legal designation of such interest.

[6] Plaintiffs in this case invoked a forfeiture which is usually termed a harsh remedy, and in order to get that relief the right thereto must plainly appear from the expressed terms of the lease itself, and not by implication or by resort to a strained or doubtful construction. Decker v. Kirlicks (Sup.) 216 S. W. 385.

They failed to discharge that burden, and for that reason the judgment of the trial court is reversed, and judgment is here rendered for the appellant.

### On Motion for Rehearing.

The question whether or not the lease might be canceled as to some of the different tracts covered, on the ground of abandonment, while it remained valid as to other tracts, was not an issue in the case and was not determined by us on original hearing, as appellant, in its motion to correct the opinion, says was done. We express no opinion on that question. The language of the opinion, construed by appellant as deciding that question, was used merely to distinguish the case pleaded, from one based upon allegations of abandonment by the lessee.

The motion for rehearing filed by appellees has been duly considered and is overruled.