RALPH et al. v. MAGNOLIA PETROLEUM CO. et al.

No. 3371.

Court of Civil Appeals of Texas. El Paso.
April 30, 1936.

Rehearing Denied June 4, 1936.

228

Jack Sayles and J. M. Chandler, both of Abilene, Smith & Smith, of Fort Worth, C. R. Carpenter, of Edinburg, Sayles & Sayles, of Eastland, and Dwight M. Smith, of Kansas City, Mo., for appellants.

Russell Surles, Roy Ledbetter, Raymond Myers, W. H. Francis, and Wallace Hawkins, all of Dallas, for appellees.

HIGGINS, Justice (after stating the case as above).

■ The instrument in question conveyed to the Magnolia Company the minerals in place with the appurtenant surface rights stated therein. Texas Co. v. Davis, 113 Tex. 321, 254 S.W. 304, 255 S.W. 601; Texas Co. v. Daugherty, 107 Tex. 226, 176 S.W. 717, L.R.A.1917F, 989.

■ It is unnecessary to determine whether under the decision in Sheffield v. Hogg, 124 Tex. 290, 77 S.W.(2d) 1021, 80 S.W.(2d) 741, title to one-eighth of the mineral estate remained in Skinner. If such interest remained in him, such fact alone imposes no obligation upon the Magnolia Company to explore for and develop the mineral estate. Appellants do not so contend.

The propositions submitted by appellants raise four questions for decision. They are well stated by appellees as follows:

"1. Does the 1926 Heber Skinner mineral conveyance vest in Magnolia Petroleum Company a fee simple estate in the oil, gas, and other minerals, or an estate upon limitation, terminating upon the lapse of a reasonable time?

"2. Did the trial court err in refusing to imply and read into the mineral deed a covenant and obligation on the part of the grantee, Magnolia Petroleum Company, to drill and develop the oil, gas, and other minerals within a reasonable time, under the facts and circumstances shown in the record and the express covenant contained in said deed to the contrary?

"3. Is such express covenant invalid and unenforcible?

"4. In the event a covenant and obligation exists on the part of the grantee to drill and develop the oil, gas, and mineral estate conveyed, was the finding of the court that such covenant had not been breached unsupported by the evidence?"

■ If the conveyance implies a covenant on the part of the Magnolia Company to explore and develop the mineral resources of the land, such covenant is not a limitation or condition subsequent which debases the estate conveyed. The remedy for breach thereof is an action for damages with the alternative right, in case

such remedy is inadequate, to compel performance by the Magnolia Company, or submit to cancellation of the conveyance. Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.(2d) 27, 30; Leonard v. Prater (Tex.Com.App.) 36 S.W.(2d) 216, 86 A.L.R. 499; Hynson v. Gulf Production Co. (Tex.Civ.App.) 232 S.W. 873.

In the case first cited Judge Greenwood said:

"The court ought not to conclude that the parties intended to prescribe a test for termination of the interests granted which could only be applied with the utmost uncertainty or confusion. Yet, if reasonable diligence in performing every one of the lessee's exploring, developing, producing, and marketing operations was the test, neither lessor nor lessee could at any time have clearly or certainly known whether the estate granted was alive or ended. Such a test must inevitably diminish—if not destroy—the value of the rights of all parties derived from a mineral lease.

"Considerations like the above have induced the courts to very uniformly refuse to regard obligations lacking in definiteness and certainty as introducing into grants conditions subsequent or limitations leading to forfeiture or termination of vested estates.

"The court declared, through Chief Justice Stayton in Benavides v. Hunt, 79 Tex. [383], 392, 15 S.W. 396:

"'It is further insisted that the part of the tenth paragraph which obligated appellees 'to use all economy in the conduct and management of said mining enterprise' gave another condition on noncompliance with which appellants were entitled to terminate the estate.

"'We are of opinion that this proposition can not be sustained, and if for no other reason because what would be deemed the "use of all economy" would be too uncertain to recognize as a condition on which a forfeiture might rest.

"'It would vary as much as the opinions of witnesses might vary on a matter of fact about which no fixed rule determines compliance or noncompliance. Right to forfeit estates vested can not exist by reason of the existence or nonexistence of a state of facts not clearly defined.'

"More recently the rule declared by Judge Stayton was reaffirmed when the court said:

"'The authority to forfeit a vested right or estate should not rest in provisions whose meaning is uncertain and obscure. It should be found only in language which is plain and clear—whose unequivocal character may render its exercise fair and rightful.' Decker v. Kirlicks, 110 Tex. [90], 94, 216 S.W. 385.

"In Grubb v. McAfee, 109 Tex. [527], 532, 212 S.W. 464, approved in Texas Company v. Davis, 113 Tex. [321], 335, 254 S.W. 304, 255 S.W. 601, the court refused to hold that the implied obligation for continued development in the ordinary oil lease was a condition subsequent, quoting from the opinion of Justice Bonner in Johnson v. Gurley, 52 Tex. [222], 227. In the latter opinion the court said:

"'The breach of a condition does not, of itself, divest the estate of the lessee, but to do this the lessor must, by express act, take advantage of the same by re-entry, or that which in law would be equivalent thereto. (1 Wash. on Real Prop., 3d Ed., marg. p. 319; Taylor's Land. and Ten., § 273; Fifty Associates v. Howland, 11 Metc.[Mass.] 99; Elliott v. Stone, 1 Gray [(Mass.) 571], 575).

"'A conditional limitation marks the period or event which is to determine the estate without entry or claim, and no affirmative act is necessary to vest the right in the grantor or him who has the next expectant interest. (Taylor's Land. and Ten., § 273; 2 Wash. on Real Prop., 3d Ed., marg. p. 459.)

"'In case of doubt as to the true construction of a clause in a lease, it should be held to be a covenant, and not a condition or limitation, as the law does not favor forfeitures. (1 Wash. on Real Prop., 3d Ed., marg. pp. 319, 320; Taylor's Land. and Ten., § 273; 4 Kent's Comm., marg. p. 129; Wheeler v. Dascomb, 3 Cush. [(Mass.) 285], 288.)'

"As a limitation, the obligation under consideration would operate more harshly than as a condition subsequent. As stated in Justice Bonner's opinion, under a limitation the estate granted is automatically terminated on the happening of stipulated events, while under a condition subsequent the lessor has the election to terminate or continue the contract after breach of the condition. It would be wholly inconsistent with this court's previous opinions to declare that this implied obligation operated as a limitation, when we had refused to

regard an identical obligation as a condition subsequent because of the harshness of its operation as such in the forfeiture of vested rights."

In the determination of the first question we may therefore eliminate from consideration the effect of covenants express or implied.

It is unnecessary to separately consider and point out the distinguishing features of various decisions in this state cited by appellants, where the instruments involved were construed as passing to the grantees determinable fees and held to be estates upon limitation. Suffice it to say they all involved instruments radically different from the one in this case.

The previous rulings of the Supreme Court were summarized by Judge Greenwood in Waggoner Estate v. Sigler Oil Co., supra, in this language:

"First. Such a writing as that here called a lease operated to invest the party called lessee and his assigns with title to oil and gas in place. Texas Company v. Daugherty, 107 Tex. 226, 176 S.W. 717, L.R.A.1917F, 989; Stephens County v. Mid-Kansas Oil & Gas Company, 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566; Humphreys-Mexia Company v. Gammon, 113 Tex. [247], 255, 254 S.W. 296, 29 A.L.R. 607.

"Second. The estate acquired by the so-called lessee and his assigns was a determinable fee, which was lost on cessation of the use of the land for purposes of oil and gas exploration, development, and production. Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. [160], 173, 254 S.W. 290, 29 A.L.R. 566; Texas Company v. Davis, 113 Tex. [321], 331, 254 S.W. 304, 255 S.W. 601; Munsey v. Marnet Oil & Gas Co., 113 Tex. [212], 220, 254 S.W. 311; Robinson v. Jacobs, 113 Tex. [231], 239, 254 S.W. 309; Thomason v. Ham, 113 Tex. [239], 246, 254 S.W. 316.

"Third. The estate of the lessee or of his assigns did not survive abandonment. Grubb v. McAfee, 109 Tex. [527], 530, 212 S.W. 464; Munsey v. Marnet Oil & Gas Co., 113 Tex. [212], 219, 254 S.W. 311; Thomason v. Ham, 113 Tex. [239], 246, 254 S.W. 316.

"Fourth. Where a mining lease provided for oil or gas royalties, and failed to define the lessee's duty as regards development after discovery of paying oil or gas, the law implied the obligation from the lessee to continue the development and production of oil or gas with reasonable diligence. Benavides v. Hunt, 79 Tex. [383], 396, 15 S.W. 396; Grubb v. McAfee, 109 Tex. [527], 530, 531, 212 S.W. 464; Texas Pac. Coal & Oil Co. v. Barker [117 Tex. 418] 6 S.W.(2d) [1031], 1035, 1036 [60 A.L.R. 936]; Freeport Sulphur Company v. American Sulphur Royalty Company [117 Tex. 439] 6 S.W.(2d) [1039], 1042, 1043 [60 A.L.R. 890].

"Fifth. Breach of the lessee's implied obligation for reasonable mineral operations will not authorize the forfeiture of the lease as for breach of condition subsequent; such obligation being a covenant. Grubb v. McAfee, 109 Tex. [527], 530, 212 S.W. 464; Texas Company v. Davis, 113 Tex. [321], 335, 254 S.W. 304, 255 S.W. 601.

"Sixth. The usual remedy for breach of the lessee's implied covenant for reasonable development of oil and gas is an action for damages, though, under extraordinary circumstances—where there can be no other adequate relief—a court of equity will entertain an action to cancel the lease in whole or in part. Texas Pac. Coal & Oil Co. v. Barker [117 Tex. 418] 6 S.W. (2d) [1031], 1035 [60 A.L.R. 936]; Freeport Sulphur Company v. American Sulphur Royalty Company [117 Tex. 439] 6 S.W.(2d) [1039], 1045 [60 A.L.R. 890]; Grubb v. McAfee, 109 Tex. [527], 534, 535, 212 S.W. 464."

In that case Judge Greenwood also quotes with approval the meaning of the word "limitation" as applied to estates as "a phrase or a number of phrases in a conveyance which delimit the duration of an interest in land."

There is nothing in the Skinner conveyance which undertakes to limit the duration of the estate conveyed. In its essential features it is in the statutory form declared to be "sufficient as a conveyance of the fee simple [title] of any real estate with a covenant of general warranty." Article 1292, R.S.

The habendum and warranty clauses are "forever," and there is a covenant obligating the grantor to pay the purchase money to the state and taxes "in order to secure the grantee in the peaceable and *perpetual* title, use, ownership and enjoyment of the property and rights herein conveyed."

Appellants have not pointed out any phrase or phrases in the conveyance which undertake to delimit the duration of the estate conveyed. Indeed, there are none

and the conveyance cannot be regarded as passing only a determinable fee. We hold it passed title to the minerals in absolute fee simple.

The second question presented is pertinent to the alternative relief sought.

■ Appellants say the principal and fundamental consideration for the conveyance by Skinner was the royalty to be paid, wherefore there is an implied obligation on the part of the Magnolia Company to explore, develop, and produce the oil, gas, and other minerals in the land within a reasonable time and with reasonable diligence. Cases are cited where such obligations were implied in oil and gas leases and deeds, but in such cases the instruments were altogether different from the Skinner conveyance.·

In Freeport Sulphur Co. v. American Royalty Co., 117 Tex. 439, 6 S.W.(2d) 1039, 1041, 60 A.L.R. 890, Judge Pierson said:·

"The court cannot make contracts for parties, and can declare implied covenants to exist only when there is a satisfactory basis in the express contracts of the parties which makes it necessary to imply certain duties and obligations in order to effect the purposes of the parties in the contracts made. Before a covenant will be implied in the express terms of a contract, and in some cases in view of the customs and practices of the business to which the contract relates, it must appear therefrom that it was so clearly in the contemplation of the parties as that they deemed it unnecessary to express it, and therefore omitted to do so, or that it is necessary to imply such covenant in order to give effect to and effectuate the purpose·of the contract as a whole. * * *

"It really is a matter of interpreting the writings of the parties and ascertaining their intentions therefrom."

Judge Pierson also quotes with approval from Merrill's Covenants Implied in Oil and Gas Leases: "It is elementary that an express stipulation upon a matter excludes the possibility of an implication upon the same subject."

In the present case it was expressly stipulated:

"It is understood that Magnolia Petroleum Company, its successors or assigns, shall never be required to, nor shall it ever be under obligation to drill or mine for such oil, gas or other minerals, and that any mining or drilling at any time hereafter, both before or after production, shall be wholly at the option of grantee. * * *

"It is further understood that the consideration and down cash payment hereinabove recited is adequate with and commensurate with and covers all rights and privileges herein granted and conveyed, conditional or unconditional."

The last stipulation precludes any supposition that the royalty to be paid constituted the principal and fundamental consideration for Skinner's conveyance. And the first stipulation precludes the implicaiton of any covenant or obligation to explore for, develop, and produce the minerals, if any, in the land. It conclusively rebuts the existence of any such implied obligation so to do. 31 Tex.Jur. pp. 831, 832; Freeport Sulphur Co. v. American Sulphur Royalty Co., supra; Bennett v. Giles (Tex.Civ.App.) 12 S.W.(2d) 843, 844; Shell Petroleum Corp. v. Shore (C. C.A.) 72 F.(2d) 193; Doehring v. Gulf Production Co. (Tex.Civ.App.) 8 S.W.(2d) 723; Simms Oil Co. v. Colquitt (Tex.Com. App.) 2 S.W.(2d) 421; Tunstill v. Gulf Production Co. (Tex.Civ.App.) 79 S.W. (2d) 657.

■ With respect to the third question in the case, appellants say the stipulation in the Skinner deed that drilling and mining for the oil, gas, and other minerals shall be wholly at the option of the grantee is invalid because it is contrary to public policy as set out in the constitutional amendment of 1917 (article 16, § 59a) commonly known as the Conservation Amendment, and for the further reason that the stipulation is unilateral and wanting in mutuality.

The public policy of this state "favors the utmost liberty of contract and freedom of land titles from conditions or restrictions which would work a forfeiture or materially impair their values." Couch v. S. M. U. (Tex.Com.App.) 10 S.W.(2d)· 973, 974. "The right to acquire and own property, and to deal with it and use it as the owner chooses, so long as the use harms nobody, is a natural right. It does not owe its origin to constitutions. It existed before them. It is a part of the citizen's natural liberty—an expression of his freedom, guaranteed as inviolate by every American Bill of Rights." The last quotation is from the opinion of Chief Justice

232

Phillips in Spann v. City of Dallas, 111 Tex. 350, 235 S.W. 513, 515, 19 A.L.R. 1387.

There is nothing in the conservation amendment which limits the right of an owner of minerals to forego development thereof if he sees fit to do so.

The sale of the minerals by Skinner to the Magnolia Company was a private transaction in which the state and the public had no concern. The validity of the stipulation is not affected by such amendment.

■ The purpose of the stipulation with reference to drilling and mining was to prevent any implication of an obligation on the part of the Magnolia Company to drill or mine, arising out of the royalty provision, and to exclude any possible interpretation of the instrument as passing only a determinable fee. Cases cited, involving the grant of purely optional rights unlimited as to the time within which the right may be exercised, have no application here. The optional right of the Magnolia Company to explore for and develop the minerals in the land passed to it as incident to the indefeasible fee simple title conveyed by the deed.

■ We hold the stipulation with reference to drilling and mining is valid, and there is not to be read into it words which would limit the right of the Magnolia Company to delay drilling and mining for a reasonable time only.

■ The conclusions stated render the fourth question in the case unimportant, but in order to pass upon all questions raised by appellants we overrule their contentions under such question. The evidence supports the findings of the trial court that there has been no breach of an obligation to drill, if such obligation may properly be implied. Nor has there been any abandonment by appellees of the estate, rights, title, and interests acquired by it under the instrument of April 27, 1926.

Affirmed.