JACOBS v. ROBINSON et al. (No. 8628.)

(Court of Civil Appeals of Texas. Dallas. April 15, 1922. Rehearing Denied May 6, 1922.)

1. **Mines and minerals** ⟨⟩78(1)—**Where royalties are sole consideration for lease, full development within reasonable time is implied where contract silent.**

Where the sole consideration for mineral rights to land is payment of royalties, and the contract is silent as to the extent of the development to be made by the lessee, there is an implied obligation that he will fully develop the land with reasonable diligence, and where the lease did not specify the number of oil wells, nor the time in which any save the first was to be drilled, the law implied full development with reasonable diligence.

2. **Mines and minerals** ⟨⟩78(2)—**Where lease specifies condition of forfeiture, lessor cannot forfeit for breach of implied covenant to develop.**

Where a mineral lease specifies a condition of forfeiture, lessor cannot declare a forfeiture on any other than a specified ground, and a breach of implied covenant to develop fully with reasonable diligence will not give the lessor the right to forfeiture; his remedy in such case not being that of re-entry.

3. **Mines and minerals** ⟨⟩77—**Oil lease construed as one which could be lost by abandonment.**

A mining lease providing that it "is not intended as a mere franchise, but is intended as a conveyance of the property," *held* not an absolute conveyance of mineral right for the period of at least 25 years, provided for therein in case of discovery; the only consideration being a one-eighth royalty which could only be realized by complete development of the property for oil and gas, so that it could be lost by abandonment.

4. **Mines and minerals** ⟨⟩77—**Question of abandonment is one of intention coupled with actual relinquishment which may be shown by cessation of development.**

Question of abandonment of an oil and gas lease is one of intention primarily, and to constitute abandonment by a lessee there must be both intention and actual relinquishment of the enterprise and a cessation of development for a short or long period ordinarily will not operate as an abandonment, though such matters tend to prove lessee's intention to retain or abandon which must be gathered from conduct, independent of lessee's claim of mental attitude.

5. **Mines and minerals** ⟨⟩77—**Evidence held sufficient to raise issue of abandonment of lease.**

In action for cancellation of oil lease and for damages, evidence *held* sufficient to raise issue of abandonment, so that it should have been submitted to the jury under appropriate instructions.

6. **Mines and minerals** ⟨⟩77—**Interest created by lease when abandoned merges in fee.**

The interest in land created by an oil and gas lease, when abandoned, becomes merged in the estate of the holder of the fee.

Appeal from District Court, Navarro County; H. B. Daviss, Judge.

Suit by I. Jacobs against Will Robinson and others. Directed verdict and judgment for the defendants, and the plaintiff appeals. Reversed and remanded for another trial not inconsistent with this opinion.

Callicutt & Johnson, of Corsicana, and Clark & Sweeton, of Greenville, for appellant.

Richard Mays and R. E. Prince, both of Corsicana, for appellees.

JONES, Special Judge. This suit was instituted by appellant, I. Jacobs, for the purpose of canceling an oil lease and for damages, against appellees Mrs. A. S. Robinson and Will Robinson. After the filing of the original petition on March 7, 1919, appellee Howard Marrs filed a plea of intervention, alleging that he had purchased the lease from the Robinsons. Appellant then filed an amended petition setting up substantially the same cause of action, making the Robinsons and Marrs defendants. The case was tried before a jury on November 17, 1920, and the court gave peremptory instructions against appellant and in favor of appellees.

On March 20, 1907, J. A. Thompson, the owner of 169½ acres of land in Narvarro county, Tex., executed to P. M. Lea a written agreement with reference to any minerals beneath the land. This agreement was duly acknowledged by the grantor, and was filed for record on December 31, 1912. With the omission of the description of the land and other matters not deemed material, the instrument is as follows:

"Know all men by these presents that Jno. A. Thompson, the party of the first part, in consideration of the sum of $1.00 paid by P. M. Lea, the party of the second part, the receipt of which is hereby acknowledged, and the further consideration hereinafter mentioned, have granted, bargained, sold, and conveyed, and by these presents do grant, bargain, sell, and convey, unto the said party of the second part, his heirs and assigns, all of the oil, gas, and coal and other minerals in and under the following described land, together with the right of ingress and egress at all

times for the purpose of drilling, mining, and operating for minerals and to conduct all operations and to lay all pipe necessary for the production, mining, and transportation of the oil, gas, water, coal, or other minerals, with the right to use sufficient water, gas, or oil to operate said property, and shall have the right to remove all fixtures, machinery, and improvements placed thereon at any time, reserving, however, to the party of the first part one-eighth of all oil produced and saved upon said premises, to be delivered in tank or pipe lines to the credit of the party of the first part free of charge. If gas or other minerals are found, second party agrees to pay the first party one-eighth of the product each year payable quarterly, for the product of each well while the same is being used off the premises, and the party of the first part, by furnishing his own pipe and connections, shall have sufficient gas free of cost for use in one dwelling house on the premises so long as the gas is utilized off the premises, but at his own risk. * * * To have and to hold the above-described premises unto the said party of the second part, heirs and assigns, on the following conditions: In case operations for either the drilling of a well for oil or mining for other minerals are not begun and prosecuted with due diligence within 60 days from this date, then this grant shall immediately become null and void as to both parties. In case the party of the second part should bore and discover either water, oil, or other minerals, then in that event this lease, incumbrance or conveyance shall be in full force and effect for twenty-five years from the time of the discovery of said product and as much longer as oil, water, gas, or other minerals can be produced in paying quantities thereon. Whenever sales are being made of the product on the land above described, a settlement thereof shall be made at the end of each quarter. This lease is not intended as a mere franchise, but is intended as a conveyance of the property above described for the purposes herein mentioned, and it is so understood by both parties to this agreement. It is understood between the parties to this agreement that all conditions between the parties hereunto shall extend to their heirs, executors, administrators, and assigns. Witness our hands this the 20th day of March, A. D. 1907.
"J. A. Thompson."

Two additions, signed by the grantor, were made to this agreement—one extending the time of the lease to 60 days; another on September 5, 1908, reading as follows:

"For a continuation of this lease, I agree that P. M. Lea shall have the privilege of retaining same by drilling two wells this year and continue to drill as the four wells then in operation will pay for others.

After this 169½-acre tract became burdened with this oil lease, numerous changes were made in its title, and on October 21, 1918, appellant became the owner of 102½ acres of said tract; it having been theretofore divided into two tracts. Appellant, of course, purchased subject to the rights of the holder of the lease.

On the 10th of October, 1910, P. M. Lea transferred this and mineral leases on other lands to appellees Mrs. A. S. Robinson and Will Robinson, and they were the owners of said lease at the time of the institution of this suit. We quote from said transfer the following:

"It is the intention of the grantor herein to convey, and he does convey herein, the certain leases above described and all the wells thereon and all the equipments used in connection therewith and the pump station and drilling rig and equipment on said premises and one-half the oil now in tanks and all the loose pipe on the ground, so that the leases, wells, equipment, and all things used in connection with development of oil on the ground shall pass to the grantee herein, save and except one-half of the oil now in the tanks on said premises. All of said leases sold and transferred herein are delivered to the grantee herewith. To have and to hold the above-described leases and property, together with all and singular the rights and appurtenances thereunto belonging, unto the said Mrs. A. S. Robinson and Will Robinson, their heirs and assigns forever. And I do bind myself, my heirs, administrator, and executors, that the said leases are valid and legally binding on the grantors therein, and that all development necessary to hold said leases has been done by me, and that no more development or drilling of any kind is necessary to hold all the wells on said leased premises, and that under the provisions of said leases the said Mrs. A. S. Robinson and Will Robinson now have the right to abandon five of said wells and pull the pipe therein and remove the same from leased premises if they so elect, and have the further right to abandon any other well that may become nonpaying, and remove the pipe therein, it being understood in this conveyance that the said Mrs. A. S. Robinson and Will Robinson do not intend to further develop said land, but buy the wells thereon with the intention of pulling the pipe in any or all nonpaying wells and remove the same at their pleasure, and I, P. M. Lea, guarantee they have that right, and, that I will pay all expenses, damages, costs, attorney's fees necessary to protect them in such right, and, in event they are prevented from abandoning any nonpaying well and removing the pipe, I will pay them additionally the value of said pipe in said well, or, if they are compelled to protect their lease by any further development, I will bear the cost thereof."

During Lea's ownership of the property, he brought in five producing wells. Four of these wells were located on appellant's tract of 102½ acres, and the other was on the other tract out of the 169½ acres. All of these wells were near the boundary line of these two tracts. Three of these wells had been abandoned by Lea previous to his sale of the lease. Oil was taken from one or both of the other two wells by the Robinsons until March 3, 1914, when all operations under this lease ceased. The Robinsons never attempted further to develop the property under the lease. There was oral evidence tending to show that the Robinsons had abandoned the enterprise of either again operat-

ing the producing well or further exploring the property for oil. This evidence was contradicted by appellees by evidence that negatived any intention of abandonment.

By appropriate assignments of error appellant challenges the correctness of the court's action in giving peremptory instructions in favor of appellees. Briefly stated, his contention is that the evidence conclusively showed an abandonment of the lease, and that peremptory instructions should have been given in his behalf, or, if mistaken in this, the evidence raised the issue of abandonment, and the jury should have been permitted, under appropriate instructions, to pass on this issue.

Appellees contend there was no error in the action of the court in giving the said instructions, because the lease contract had the effect to invest the owner thereof with the right to develop the land, at his election, at any time during the full term of 25 years, and, having completed a paying oil well within the time prescribed by the lease, the right thereby acquired could not be abandoned, or, if mistaken in this, contend that there was no evidence raising the issue of abandonment.

[1] It is now the settled law of this state that, where the sole consideration for a conveyance of the mineral rights to land is the payment of royalties from the minerals taken therefrom, and where the contract of conveyance is silent as to the extent of development to be made by the lessee, there is an implied obligation that he will fully develop the land with reasonable diligence. So in the instant case, while the lease did not specify the number of wells to be drilled nor the time within which any, save the first well, was to be drilled, the law implied the obligation that Lea, the lessee, would fully develop the land for oil and would do so with reasonable diligence. Grubb v. McAfee, 109 Tex. 527, 212 S. W. 464; Munsey et al. v. Marnet Oil & Gas Co. (Tex. Civ. App.) 199 S. W. 689; 18 R. C. L. 1212.

[2] It is also the settled law in this state that in a mineral lease which specifies a condition of forfeiture the lessor cannot declare a forfeiture on any other ground than the one specified, and that, if the implied covenant to develop fully and with reasonable diligence the land for oil or gas is breached; such breach will not give the lessor the right of forfeiture. The lessor has a remedy in such a case, but it is not that of re-entry upon the leased premises. Grubb v. McAfee, supra. So in the instant case appellant had no right of forfeiture by reason of any breach of the said implied covenant in the lease.

[3] The important question for decision then is: Does this lease come under that character of leases that may be abandoned by the lessee; he having performed the only condition subsequent specified in the lease? In Grubb v. McAfee, supra, the Supreme Court of the state of Texas, in passing upon a lease very similar except in one particular, which will be later noticed, and in a very exhaustive opinion, held that all rights under such leases could be lost by abandonment. Unless the clause in the lease in the instant case declaring, "This lease is not intended as a mere franchise, but is intended as a conveyance of the property above described for the purposes herein mentioned," takes this case out of the rule announced in Grubb v. McAfee, the decision is conclusive of this question. We do not believe this clause can have the effect of making this lease an absolute conveyance of the mineral rights for a period of at least 25 years. The only consideration moving to the grantor in the lease was the one-eighth royalty, and this consideration could only be realized by the complete development of the property for oil and gas. There is nothing to indicate that the parties intended by such clause to discharge the lessee from his duties under the implied covenant to develop fully the land as to oil or gas, and to do so with reasonable diligence. In fact, the clause states in effect that the grant is for this purpose. The following language in the case of Grubb v. McAfee is just as pertinent to the lease in this case as to the one therein considered.

"It is to be noted that the written contract expressly required nothing of defendant in error save to begin a well within 30 days and to continue to drill it until oil was found in paying quantities or until a depth of 300 feet was reached. And the Court of Civil Appeals determined that the law required no more of defendant in error, in order to acquire a vested right in the land for 20 years. To uphold that construction of the contract would require us to assume that the owner of the land intended to grant such a vested right, not only without benefit to himself, but even to his positive detriment. The consideration for this contract to the owner consisted alone in royalties on the minerals to be produced during the term of the contract, unless we can reasonably assume that it would benefit him to have his land proven as containing valuable oil deposits, though no oil was produced therefrom for a term like 20 years. No assumption of that sort can be reasonably indulged. It would ignore the very nature of oil and gas, which were the minerals first mentioned in the contract. For, the natural result of stopping the production of oil or gas, from the tract on which it was discovered in paying quantities for such a period of time would be to invite its drainage from adjacent tracts, to say nothing of the danger of the oil's migration."

We therefore conclude that the said lease is one that could be lost by abandonment.

[4, 5] The question of abandonment is one of intention primarily. To constitute abandonment by the lessee of a lease for oil or gas, there must be both an intention to abandon and an actual relinquishment of the enterprise. A cessation of development on the

leased premises for a short or a long period of time ordinarily will not operate as an abandonment. The materiality or significance of the length of the period in which there has been a cessation of all operations is that it tends to prove the intention on the part of the lessee to retain or give up the lease. This intention to abandon is to be gathered from the conduct of the owner of the lease, independently of what he claims was his mental attitude with respect thereto. The evidence in this case is not of the character that shows an abandonment as a matter of law.' There is, however, evidence in the case that is sufficient to raise the issue of abandonment,' and this issue should have been submitted to the jury under appropriate instructions. As this case must be tried again, no further comment will be made on the testimony.

We therefore overrule the assignment that the evidence, as a matter of law, established the abandonment of the leased premises, but sustain the assignment that abandonment was an issue to be submitted to the jury.

[6] The view of the case above expressed renders it unnecessary to decide the question raised by appellees that, as appellant had not connected himself with the title to the minerals under his land, even if there were an abandonment, he could not claim any benefit thereunder. Such a rule, if obtaining at all, can only obtain where the separation of the mineral estate and the surface estate is by an absolute conveyance of the mineral estate. Such is not this case. The interest in the land created by the instrument in this case, when abandoned, became merged into the estate of the holder of the fee.

For the error in giving peremptory instructions, this cause is reversed, and remanded for another trial not inconsistent with the views herein expressed.

HAMILTON, J., did not sit in this case.