BRYSON et ux. v. MID–KANSAS OIL & GAS CO. et al.  (No. 3425.)

Court of Civil Appeals of Texas. Texarkana. July 12, 1927.

Rehearing Denied Sept. 8, 1927.

1. Judgment ⬤⟳739—Judgment held not res judicata as to failure of consideration if it occurred too late to raise issue in former hearing for lease cancellation.

If failure of consideration for lease occurred at such time that it could not have been litigated in former suit for cancellation, former judgment was not res judicata of a right to maintain later suit to cancel lease for such failure.

2. Judgment ⬤⟳956(1)—Burden was on plaintiffs, alleging judgment was not res judicata as to failure of consideration of oil lease.

Where plaintiffs alleged that failure of consideration occurred after a former hearing for cancellation of an oil and gas lease, hence question was not adjudicated by judgment therein, burden of proving the time of failure was on them.

3. Judgment ⬤⟳956(5)—Plaintiffs did not sustain burden of proving that judgment was not res judicata as to failure of consideration of oil lease.

Plaintiffs, alleging that failure of consideration occurred after a former hearing for cancellation of oil and gas lease, so that question was not adjudicated by judgment therein, *held* not to have sustained burden of proof.

**4. Mines and minerals ⬤⇒58—Consideration as recited in contract held sufficient to support oil lease, hence possible failure of other consideration was immaterial in cancellation suit.**

$1, promise to drill a well, and promise of cash, gas, and royalty payments on production, *held* sufficient consideration to support lease of oil lands, hence possible failure of other consideration was not material in cancellation suit.

**5. Mines and minerals ⬤⇒78(2)—Where oil lease stated only one ground for forfeiture, no other ground could be urged.**

Where lease of oil lands provided only one ground for forfeiture, that of not drilling within a certain time, and lessee had drilled a well within required time, no other ground for forfeiture could be urged, since, when the ground of forfeiture is specified in a contract, a forfeiture cannot be had on any other ground.

**6. Contracts ⬤⇒318—Where contract specifies forfeiture grounds, such grounds are exclusive.**

When the grounds for a forfeiture are specified in a contract, a forfeiture cannot be had on other grounds.

**7. Cancellation of instruments ⬤⇒! — If oil lease did not correctly evidence contract of parties, remedy was by reformation, not by cancellation.**

If lease did not correctly evidence the contract of the parties as to where an oil well should be drilled, lessor's remedy was not to have the lease canceled, but to have the instrument reformed.

Appeal from District Court, Harrison County; P. O. Beard, Judge.

Suit by J. M. Bryson and wife against the Mid-Kansas Oil & Gas Company and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

May 23, 1924, appellants J. M. Bryson and wife commenced (in the district court of Harrison county) and thereafter prosecuted to a judgment a suit against appellees F. A. Fuller, A. C. Scott, F. M. Fuller, J. L. Ford, the Shreveport Producing & Refining Company, a corporation, and the Mid-Kansas Oil & Gas Company, also a corporation, to cancel a written instrument purporting to have been executed by them October 5, 1923, and to be a lease by them to said F. A. Fuller of 100 acres of land in said Harrison county for the purpose "of mining and operating for oil, gas," etc. The grounds upon which appellants then sought to cancel the instrument were: (1) That they did not execute it; (2) that, if they did execute it, they never delivered it, but placed it as an escrow with the cashier of a bank to be delivered when $2,124 was paid to the cashier for them; (3) that defendants never paid the $2,124, nor any part thereof. November 13, 1924, judgment was rendered, denying appellants any relief and in said appellees' favor for costs.

Appellants having prosecuted an appeal to this court, said judgment was affirmed October 29, 1925. See Bryson v. Fuller (Tex. Civ. App.) 279 S. W. 488.

The suit resulting in the judgment from which this appeal is prosecuted was commenced by appellants in said district court May 29, 1926, against the appellees above mentioned and appellees Ohio Oil & Gas Company, a corporation, and North Central Oil Company of Texas, also a corporation. It was to cancel the same lease on the ground that the consideration for it had "totally and wholly failed."

According to recitals in the instrument evidencing the lease the consideration for its execution by appellants was $1 to them paid and the undertaking of the lessee named therein (1) to deliver to appellants, free of cost to them, "one-eighth part of all oil produced and saved from the leased premises"; (2) to pay the lessors $200 each year in advance for the gas from each well where gas was found while same was being used off the premises, and permit them to use without charge therefor gas from such well for lights and fuel in the dwelling house on the land; and (3) to pay the lessors "for gas produced from any oil well and used off the premises at the rate of $200 per year for the time during which such gas was used," and "one-eighth of the net proceeds derived from the sale of casing-head gas utilized in making gasoline."

At the time the lease was executed appellants executed another instrument, whereby they leased 184 acres of land in Louisiana to appellee A. C. Scott, for the purpose of mining and "operating for oil," etc. According to recitals in the instrument last mentioned the consideration for the lease of the 184 acres was like that recited in the lease of the 100 acres in said Harrison county, but the instrument contained a stipulation as follows which was not in the lease of the 100 acres:

"That lessee further agrees to purchase one-half of the mineral rights of lessor, and to pay lessor $10 per acre for one-half of mineral rights upon the drilling in of said well. It being intended that said minerals be made a part consideration of this lease, failure of lessee to purchase said mineral (rights) shall render this lease null and void. And lessor hereby binds himself to deliver said one-half minerals to lessee on the payment of $10 per acre."

At the trial of the former suit appellants contended (as they did at the trial of this suit in the court below) that the two leases were parts of one transaction and together constituted one contract only. In their answer in the former suit defendants therein alleged that as a part of the transaction covering the lease of the 100 acres they agreed:

"To buy one-half of certain mineral rights of the defendant J. M. Bryson and to pay him therefor in cash in the amount of $1,840 for the

said 184 acres in Caddo parish, La., leased about the same time."

In their petition in the instant suit appellants alleged:

"That at the time of the trial of this cause in the Harrison county district court on November 13, 1924, the said J. M. Bryson had theretofore filed suit against A. C. Scott in Louisiana to cancel the lease and sale of the mineral rights 184 acres in Caddo parish, and that the court in Louisiana on July 12, 1924, entered up a judgment and decree making valid the sale of the mineral rights in Louisiana upon condition that A. C. Scott pay, or tender to J. M. Bryson, the sum of $1,840 within 10 days from the date of that judgment; that that judgment was proven up by the defendants in the former trial of this cause as showing that the lease in Louisiana was valid, and the defendants herein, as defendants in that case, contended that the decree in Louisiana had that effect.

"That after the judgment was rendered in this cause on November 13, 1924, the court in Louisiana, at the suit of J. M. Bryson on, to wit, the 10th day of June, 1925, opinion filed June 13, 1925, set aside and annulled the former decree rendered in that cause on July 12, 1924, making valid the sale of the mineral rights to the Louisiana property, and held then and there that the lease executed by J. M. Bryson and wife, on the 5th day of October, 1923, in favor of A. C. Scott, be decreed null and void, and same be erased from the records of the parish of Caddo.

"That this said last decree was rendered pending the appeal of the case which had been taken by J. M. Bryson and wife from the judgment rendered in this present cause, and that the plaintiffs herein had no opportunity to show to the court the fact that said purchase of said mineral rights had been annulled, and to show to the court what effect that would have on the defendant's rights to the lease to the land in Harrison county, Tex.

"Plaintiffs now say that J. M. Bryson and wife would not have executed the Texas lease except upon the promise to pay the $1,840 for one-half of the mineral rights to the Caddo parish property, and the said defendants have refused to pay the $1,840 as was adjudged due by the court in Louisiana, and have permitted and allowed that sale to be canceled and annulled, and that, therefore, they are under no obligation to pay the $1,840, and therefore all considerations that ever existed for the lease to the Texas property has totally and wholly failed.

"That the plaintiffs say further that in the trial and in the proceedings and hearing of the trial had in this case heretofore, the cause was heard and adjudged upon the theory that the defendants herein were under valid and subsisting obligation to pay the $1,840 to J. M. Bryson for the lease on the Texas land and the sale of one-half of the mineral rights in Louisiana, and that they were ready and willing to do so. But since the former trial of this cause the defendants herein have failed and refused to tender or to pay to J. M. Bryson the $1,840, and are yet seeking to hold valid the Texas lease which they knew and recognized and agreed was executed solely as the result of the promise of A. C. Scott and the defendants to pay the $1,840.

"And not having paid the same, or any part thereof, but having refused to do so, it would be inequitable and unjust to make valid the Texas lease against Bryson and wife when the parties all knew the fact to be that Bryson and wife refused to execute the Texas lease except in connection with the Louisiana lease and the sale of the mineral rights."

At the trial from which this appeal was prosecuted the court found that appellants refused to execute the lease on the 100 acres, "unless he received some money in the transaction," and that it was agreed between them and appellee F. A. Fuller that, if they "would execute the oil and gas lease on the land in Texas containing 100 acres that his codefendant A. C. Scott would purchase one-half the mineral rights and the oil and gas lease on the 184 acres of land situated in the state of Louisiana, owned by J. M. Bryson, for $1,840. The reason this was done was because Fuller and Scott did not want to pay any money to J. M. Bryson for oil and gas leases in Texas because they were not paying any money to other people owning land in Texas for leases in the same territory. If A. C. Scott had not purchased the oil and gas lease and one-half of the mineral rights of the 184-acre tract of land in Louisiana, Bryson would never have executed the lease on the 100 acres."

By the terms of the lease covering the 100 acres in Harrison county the lessee was to "commence operation" for the drilling of an oil or gas well thereon or on land within —— miles of same on or before February 1, 1924, and a failure on his part to do that and to diligently continue the drilling until the well was completed was to render the lease "null and void." By the terms of the other lease Scott was to commence such operations on the 184 acres in Louisiana, or on land within one mile of same, on or before said February 1, 1924, and a failure on his part to do so was to render that lease "null and void."

On the trial of the instant case the court found that appellees "put down a well within 200 feet of the Louisiana tract and within two miles of the Texas tract, and that work started on same by February 1, 1924."

The court made other findings as follows:

"At the time the original suit was tried in the district court of Harrison county, J. M. Bryson and wife had become dissatisfied with the sale of the oil and gas lease and the mineral rights to the Louisiana land and had instituted suit against A. C. Scott in the courts of Caddo parish, La., to cancel the lease and sale of the mineral rights conveyed to A. C. Scott upon the Louisiana land. On the 12th day of July, 1924, the court in Caddo parish, La., entered a judgment making valid the conveyance of the sale of the mineral rights to the land in Louisiana to A. C. Scott upon condition that A. C. Scott pay or tender to J. M.

Bryson $1,840 within 10 days from date of judgment. The judgment in the Louisiana case was proven up by the defendant in the first trial as showing the lease in Louisiana was at that time valid.

"J. M. Bryson and wife filed suit again to cancel said lease in Louisiana, and on the 13th day of June, 1925, the court in Caddo parish, La., set aside and annulled its former decree rendered on July 12, 1924, which made valid the sale of the mineral rights of the Louisiana property and in said last decree did annul and declare void the lease executed by J. M. Bryson and wife to the Louisiana land on the 5th day of October, 1923, and did order that said lease be erased from the records of Caddo parish. This last judgment by the Caddo parish court was rendered pending the appeal by J. M. Bryson and wife from the judgment of the district court in Harrison county."

On the facts found by him the court concluded as matters of law that:

"The new evidence or condition offered by the plaintiffs J. M. Bryson and wife to set aside judgment involving the same subject-matter as is involved in this suit would prove only a partial failure of consideration for the Texas lease upon the 100 acres of land. This evidence would not be sufficient to set aside the Texas lease. Bryson v. Fuller (Tex. Civ. App.) 279 S. W. 488.

"Although the two leases were made a part of the same contract, still the Texas lease provides the conditions upon which it should be forfeited; and in this suit the lease is not sought to be forfeited upon violation of the conditions embraced in said Texas lease [to wit, failure to commence operations for drilling on the 100 acres or on land within —— miles of it on or before February 1, 1924.]"

This appeal, like the one in the former suit, is from a judgment denying appellants any relief and in appellees' favor for costs.

Prendergast '& Prendergast, of Marshall, for appellants.

Davidson, Blalock & Blalock, of Marshall, for appellees.

WILLSON, C. J. (after stating the facts as above). [1] At the trial of the former suit to cancel the lease on the Texas land, and on the appeal from the judgment rendered therein against them, appellants insisted that the $1,840 to be paid for an interest in the mineral rights on the Louisiana land was the consideration for both the leases and that same failed February 1, 1924, when Scott was to pay same and did not. At the trial of the instant suit appellants renewed their insistence that the $1,840 was the consideration for the leases, but contended that, instead of failing on said February 1, 1924, it failed June 13, 1925, when the judgment of the Louisiana court canceling the lease on the Louisiana land was rendered. The first suit to cancel the lease on the Texas land having been tried before said June 13, 1925, appellants insist a failure of consideration occur-

ring then could not have been litigated in that suit and that the judgment rendered therein, therefore, was not res adjudicata of a right in them to maintain this suit to cancel that lease for that failure. They do not claim such was not the effect of the judgment if the consideration for the lease failed before November 13, 1924, when their first suit was tried.

[2, 3] If the failure of consideration complained of in the instant suit entitled appellants to a cancellation of the lease on the Texas land, and if such failure occurred after the trial of the first suit to cancel that lease, we agree the judgment in that suit did not deprive them of a right to maintain this one. But on the record before us we think the burden was on appellants to allege, and at the trial of the instant suit to prove, that such failure occurred after the first suit was tried, and we think they failed to discharge the burden. According to testimony of appellant J. M. Bryson as a witness, the failure complained of occurred February 1, 1924, when, he said, the $1,840 was to be paid but was not paid. According to the stipulation in the instrument evidencing Scott's undertaking, he was to purchase the interest in mineral rights on the Louisiana land and pay the $1,840 "upon the drilling in of said well." What well was referred to and what was meant by the phrase "drilling in" did not appear from evidence heard at the trial of the instant suit. Certainly it cannot be said the testimony referred to showed the claimed failure of consideration occurred after said November 13, 1924. And we do not think the contention of appellants in their brief that it appeared such failure occurred June 13, 1925, when the judgment of the Louisiana court canceling the lease on the Louisiana land was rendered, is tenable. The ground of the Louisiana court's action does not appear from anything in its judgment or in any other part of the record sent to this court on this appeal. The court's action may, or it may not, have been based on a showing that the consideration for that lease had failed, and, if it was based on such a failure, that same occurred before said November 13, 1924.

[4] However, if we thought appellants had discharged the burden resting upon them and that it appeared the failure of consideration they complain of occurred after the trial of their first suit, our conclusion that the judgment should be affirmed would remain unchanged, for, as stated in the opinion disposing of the appeal in the first suit, we think the consideration recited in the instrument evidencing the lease of the Texas land was amply sufficient to support it, and that appellants' remedy for appellees' failure to purchase and pay for the interest in the mineral rights on the Louisiana land was a suit for damages.

[5-7] And there is still another reason why we think appellants were not entitled to have

the lease on the Texas land canceled. By the terms of that lease a failure to commence drilling a well on the land covered by it, or on land "within —— miles of same," on or before February 1, 1924, was to render the lease "null and void." Such failure was the only ground of forfeiture provided for in the lease. The evidence showed that before the time specified appellees began drilling a well on land within two miles of the leased land. The rule is that, when the grounds for a forfeiture are specified in a contract, a forfeiture cannot be had on other grounds. Grubb v. McAfee, 109 Tex. 527, 212 S. W. 464; Jacobs v. Robinson (Tex. Civ. App.) 241 S. W. 241. The contention with reference to this phase of the case, that it appeared the intention of the parties to the lease was to bind the lessee to commence drilling a well on the leased land or on land within *one* mile of it before said February 1, 1924, and that the lease ought to have been construed accordingly by the trial court, cannot be sustained. If the lease did not correctly evidence the contract of the parties as to where the well should be drilled, appellants should have had it reformed in that respect. For anything to the contrary appearing in the record before us, they never did or attempted to do that.

The judgment is affirmed.