## G. & H. MOTOR FREIGHT LINES, Inc., et al. v. RAILROAD COMMISSION et al.

### No. 8978.

Court of Civil Appeals of Texas. Austin.

May 1, 1940.

Rehearing Denied May 29, 1940.

Spears, Conger, Baskin & Spears, of San Antonio, Robert W. McKissick and W. W. Heath, both of Austin, and Curtis E. Hill, of Dallas, for plaintiffs in error.

Rawlings & Sayers and Nelson Scurlock, all of Fort Worth, for defendant in error Red Arrow Freight Lines, Inc.

Gerald C. Mann, Atty. Gen., and Geo. W. Barcus and Glenn R. Lewis, Asst. Attys. Gen., for defendant in error Railroad Commission of Texas.

BLAIR, Justice.

Appellants, G. & H. Motor Freight Lines, Inc., Brown Express Company, C. T. English, and Charles Herder, Jr., instituted this statutory proceeding against appellees, the Red Arrow Freight Lines, Inc., and the Railroad Commission, to set aside an order of the Commission authorizing the Red Arrow to operate certain common carrier motor carrier service between Bremond and LaGrange, to cancel the certificate of authority, and to perpetually enjoin the Red Arrow from any operation thereunder. From the adverse judgment of the trial court appellants have appealed.

The following statements from appellees' brief with respect to the nature and result of the proceeding will serve as a preliminary statement to each question presented on this appeal:

"The Red Arrow is a motor carrier operating over routes connecting Fort Worth, Dallas, Houston, San Antonio and cities in the Rio Grande Valley. One of the routes served by it extends from Dallas south to Bremond via Ennis, Corsicana and Mexia. Another route extends from Houston to San Antonio via Rosenberg, Eagle Lake, Columbus, Schulenburg and Luling. There was a connection extending from Schulenburg north to LaGrange. Finally, the Red Arrow had a route extending from San Antonio to Victoria via Cuero. This line connected with one extending from Houston to Corpus Christi and points in the Rio Grande Valley.

"On April 8, 1936, the Red Arrow filed an application, numbered 1991 on the docket of the Commission, for authority to operate a common carrier motor carrier service from Bremond to Cuero via Hearne, Rockdale, Giddings, LaGrange, Schulenburg and Yoakum. After a hearing the Commission entered an order, dated March 30, 1937, denying the application.

"On September 16, 1937, Red Arrow filed another application, numbered 2126 on the docket of the Commission, for authority to operate a common carrier motor carrier service over the same route between Bremond and Cuero, conditioned, however, first, that the applicant be prohibited from serving intermediate points between Bremond and LaGrange on freight originating in and destined to Houston, San An-

tonio, Austin or Dallas, and prohibited from serving San Antonio or Austin over this route on freight originating in or destined to Dallas or any intermediate point between LaGrange and Bremond, and prohibited from serving Austin and San Antonio on freight originating in or destined to Waco, and prohibited from serving intermediate points between LaGrange and Rockdale on freight originating in or destined to Waco, but providing that none of the restrictions should limit or restrict the operations by virtue of other certificates of public convenience and necessity that had theretofore been issued to the Red Arrow by the Commission. Secondly, as to that portion of the route between Schulenburg and Cuero, the application was conditioned that Red Arrow be prohibited from serving Halletsville on freight originating in or destined to Houston.

"After notice to all interested parties, a hearing was had wherein plaintiffs (appellants herein), among others, appeared and contested the application before the Commission. However, on September 27, 1938, the Commission entered an order granting the application. This order provided:

" 'It is further ordered by the Commission that this order shall not be final and become effective until twenty days after it is actually signed by the Commission; provided, however, that if a motion for rehearing of the application be filed by any party at interest within such twenty day period, this order shall not become effective until such motion is overruled, or, if such motion be granted this order shall be subject to further action by the Commission.'

"On October 8, 1938, the plaintiffs (appellants herein) filed a motion for rehearing on the application with the Railroad Commission, wherein they prayed that the order entered by the Commission on September 27, 1938, and just referred to, 'be stayed until the rehearing can be set down and conducted under the rules and regulations of the laws of the State of Texas and that protestants be given an opportunity to orally argue the matters involved before the entire Commission.' On November 15, 1938, the Commission entered an order 'that protestants' motion for rehearing in the above application be and the same is hereby granted.' Finally on January 12, 1939, the Commission entered an order reciting that it had reconsidered the application and the oral argument made after the mo-

tion for rehearing was filed and granted, and had reached the conclusion that the errors assigned in the motion for rehearing were not well founded. It was, therefore, ordered that the order dated September 27, 1938, granting the application be reaffirmed and made final.

"Following the order of January 12, 1939, just referred to, plaintiffs (appellants herein) filed a second motion for rehearing on January 18, 1939, and it is claimed by them that the Commission entered an order, dated January 19, 1939, granting this second motion for rehearing. However, the trial court found that the instrument referred to 'was never intended nor entered as an order of the Railroad Commission.' And in compliance with the order of January 12, 1939, which appears to be a final order in every respect, granting the application of Red Arrow, the Railroad Commission on January 26, 1939, issued to the Red Arrow Certificate No. 3009, authorizing the service applied for."

Appellants contend that since the application of Red Arrow in Common Carrier Motor Carrier Docket No. 1991, denied by the Commission on April 30, 1937, was in all material respects similar to or identical with its application in Common Carrier Motor Carrier Docket No. 2126, filed September 26, 1937, and no changed condition after the denial of the first application having been shown, the Commission should have sustained the plea of res adjudicata of appellants based on the order of denial in the Docket No. 1991 application. This plea of res adjudicata was presented to the Commission on its hearing of the Docket No. 2126 application and denied by it. It was also presented to the trial court on the appeal and by it denied. The denial of the plea of res adjudicata by the Commission and the trial court is sustainable upon two grounds. In the first place an examination of the two applications shows a substantial difference between them. By the first application in Docket No. 1991, Red Arrow sought a certificate authorizing a common carrier motor carrier service between Bremond and Cuero via Hearne and other intermediate towns. This was denied. The subsequent application in Docket No. 2126 sought a certificate to operate over the same route, and contained conditions or restrictions so as to prohibit service to intermediate points between Bremond and Cuero, and specifically restricted other

services from named points on the route to or from Houston, San Antonio, Austin, Dallas, Waco, and other places. These restrictions were not contained in the first application. The second application was also conditioned that Red Arrow be prohibited from serving Hallettsville on freight originating in or destined to Houston, which was not contained in the first application.

In the second place, there was substantial evidence showing a change of conditions subsequent to the time the Commission denied the first application and before the granting of the second application. These changed conditions arose by reason of the fact that Red Arrow had purchased certificates of other operators which increased its volume of freight moving from Fort Worth and Dallas to South Texas. By its application in Docket No. 2126, Red Arrow sought to handle this and other freight over a direct route to the south, which prior to this application was compelled to follow a route going east from Mexia to Palestine, from Palestine to Houston, and thence to San Antonio, Corpus Christi, and other towns covered by Red Arrow's certificates in the Rio Grande Valley.

It is manifest from the facts stated that the order of the Commission denying the first application did not purport to determine the question of the public convenience and necessity for the through service from Fort Worth and Dallas south only, because it had to determine the question in the light of the fact that the first application also sought authority to serve all intermediate towns from Bremond to Cuero. Nor did it determine the question of the public necessity and convenience of the through service on the first application in the light of the conditions which developed subsequent to such hearing by reason of the fact that Red Arrow purchased other certificates which would require the handling of additional freight over a direct route to the south rather than over the circuitous route above described.

The parties do not disagree upon the rule that if the second application was substantially different from the first application, or that if there had been a substantial change of conditions between the time of denial of the first application and the granting of the second application, the doctrine of res adjudicata would not apply. The differences of the parties arise on the question of whether there was any evidence showing a substantial difference between the two applications, or showing a substantial change of conditions arising subsequent to the denial of the first application and before the granting of the second application. We hold that the facts above stated constitute substantial evidence sustaining the action of the Commission on the res adjudicata question. As sustaining our conclusion on this question we cite: Magnolia Petroleum Co. v. New Process Production Co., 129 Tex. 617, 104 S.W.2d 1106; Hermann v. Allen, 103 Tex. 382, 128 S.W. 115; Bryson v. Mid-Kansas Oil Co. Tex.Civ.App., 297 S.W. 1045, writ refused; Galveston Chamber of Commerce v. Railroad Commission, Tex. Civ.App., 137 S.W. 737; 26 Tex.Jur. 60.

Appellants further contend that the order of the Commission entered September 27, 1938, in Docket No. 2126 is void, because pursuant to their motion filed October 8, 1938, the Commission on November 15, 1938, granted a rehearing, which had the effect of granting a new trial as in a court, and set aside all prior proceedings had in Docket No. 2126, including notice, hearing, and the order of September 27, 1938, granting the application of Red Arrow for the common carrier motor carrier service in question, leaving the application in Docket No. 2126 in the same status that it occupied immediately after it was filed and before it was set for hearing.

In this connection appellants also assail the order of the Commission dated January 12, 1939, granting the common carrier motor service in question and certificate of authority therefor, because it is contended that after the order of November 15, 1938, granting the rehearing, the status of the application in Docket No. 2126 was the same as if a trial court had granted a new trial, setting aside all prior orders in Docket No. 2126, including notice and hearing, and required the Commission to proceed after notice as in a trial de novo; and that all orders entered after the granting of the rehearing on November 15, 1938, were void because entered (1) without notice and hearing; (2) without any evidence to support them; and (3) without the required written findings of fact as provided by Sec. 12(a) of Article 911b, Vernon's Ann.Civ.St.

Neither of these contentions is sustained.

It is apparent from all of the orders of the Commission above detailed that it intended to and did retain jurisdiction over the application presented by Red Arrow in Docket No. 2126 until its final order of January 12, 1939, which finally determined the controversy and granted the application by reaffirming its order of September 27, 1938, and directing that the certificate of authority to operate the common carrier motor carrier service in question be issued to Red Arrow. This intention of the Commission is clearly stated in its order of September 27, 1938, which granted the application, but postponed its effective date for twenty days in which a motion for rehearing might be filed, and in which event the order specifically provided as follows: " * * * that if a motion for rehearing of the application be filed by any party at interest within such twenty day period, this order shall not become effective until such motion is overruled, or, if such motion be granted this order shall be subject to further action by the Commission."

That appellants understood this provision of the order as continuing the jurisdiction of the Commission is shown by their motion for a rehearing filed on October 8, 1938, wherein they prayed that the order of September 27, 1938, "be stayed until the rehearing can be set down and conducted under the rules and regulations of the laws of the State of Texas, and that protestants (appellants herein) be given an opportunity to orally argue the matters involved before the Commission." Appellants did orally argue their motion for rehearing before it was granted on November 15, 1938, and the final order of the Commission, dated January 12, 1939, recited that it had reconsidered the application and the oral argument made after the motion for rehearing was filed, and had reached the conclusion that the assignments of error contained in said motion were not well founded; and therefore declared that the order dated September 27, 1938, granting the application be reaffirmed and made final, and that the certificate of authority be issued for the service in question. Thus it is clearly shown that the Commission by every act and order prior to its final order of January 12, 1939, intended to reconsider the matter in controversy on the basis of the record of the hearing and order of September 27, 1938, which order was specifically suspended "subject to further action of the Commission." The wisdom of such procedure is manifest, because the Commission is not confronted with the question of whether the order granting the application would authorize operation from its date. It has notified the parties that the order is suspended pending the motion for rehearing and "subject to further action of the Commission," and it must be held that the parties understood that the Commission after its order of November 15, 1938, granting the motion for rehearing, intended to reserve jurisdiction for the purpose of finally granting or refusing the application in whole or in part, and to accordingly issue the certificate authorizing the operation.

If, as contended for by appellants, the order of November 15, 1938, granting the rehearing, is analogous to the granting of a motion for a new trial in a civil case, then the case of Gulf, C. & S. F. Ry. Co. v. Muse, 109 Tex. 352, 207 S. W. 897, 4 A.L.R. 613, is in point and sustains our view that under the procedure above detailed the Commission necessarily retained jurisdiction and finally disposed of the matters in Docket No. 2126, on January 12, 1939. In the Muse case the court extended its term because of shortness of time. The jury returned a verdict against the railroad for $4,000. Within two days the plaintiff filed a motion for a new trial, which was later granted by the court. The railroad company immediately filed a motion for rehearing and to set aside the order granting the new trial, whereupon the court directed the parties to brief the questions presented; and several weeks thereafter the court granted this motion, and finally rendered judgment for plaintiff for $4,000. The Court of Civil Appeals held that the granting of plaintiff's motion for a new trial ended the extended term of the court, and that all subsequent orders made in the cause were without authority in law and void. The Supreme Court, however, reversed the judgment of the Court of Civil Appeals, holding that the jurisdiction of the court over both the subject matter and the parties continued until all issues of both law and fact had been finally determined, and that since the order vacating the award of the new trial was made before the end of the extended term, its validity was beyond question. In reaching this conclusion, the court reasoned that the court retained jurisdiction of all steps leading to a final judgment,

including the award of a new trial and the setting aside of such an award to correct error or injustice. This rule should apply with equal or greater force to a hearing before the Commission for a certificate of necessity and convenience to operate motor carrier service, because such proceedings do not require strict rules of pleadings and evidence as do civil cases, and the Commission does not have terms as do the courts. Railroad Commission v. Brown Express, Tex.Civ.App., 106 S.W. 2d 327. And particularly should it be held in the instant case that the Commission retained jurisdiction, because by its order of September 27, 1938, granting the application, it expressly provided that if a motion for rehearing were filed and granted, then "this order should be subject to further action by the Commission."

■ The contentions that the order of January 12, 1939, overruling the motion for rehearing, finally granting the common carrier service in question and issuing the certificate therefor, was made without notice and hearing, without evidence to support it, and without the required written findings of fact by the Commission, are not sustained.

■ There is no dispute that appellants had notice of the application in Docket No. 2126; that they appeared and that evidence was introduced; that the Commission filed a lengthy opinion granting the application on September 27, 1938, which opinion contained a complete finding of fact on the various issues in controversy; and no attack is made upon the sufficiency of these facts to sustain the order of September 27, 1938, granting the application. It is also manifest that after the hearing and order of September 27, 1938, the Commission intended to retain jurisdiction of the application in Docket No. 2126, not as an original matter, nor as a matter for a trial de novo; but as a case which already had been tried and was pending on motion for a new trial or for a rehearing to correct any error that may have been pointed out in the motion. Nor is there any dispute that appellants filed this motion for a rehearing and were afforded a hearing and argument thereon. This motion was granted "subject to further action by the Commission." Appellants did not request the taking of further testimony either in their motion or otherwise so far as is revealed by the record; and this fact alone distinguishes the in-

stant case from the case of Sproles Motor Freight Line v. Smith, Tex.Civ.App., 130 S.W.2d 1087, relied upon by appellants. The record is without dispute that they had notice of each step taken by the Commission until it finally disposed of the matter on January 12, 1939. This procedure meets every test of due process as to notice and hearing, because appellants did have a fair opportunity to appear and defend their interests. Mabee v. McDonald, 107 Tex. 139, 175 S.W. 676. And rehearings or new trials are not essential to due process of law, either in judicial or administrative proceedings. Pittsburgh C. C. & St. L. R. Co. v. Backus, 154 U.S. 421, 14 S.Ct. 1114, 38 L.Ed. 1031; Sproles Motor Freight Line, Inc. v. Smith, Tex.Civ. App., 130 S.W.2d 1087, writ refused; Railroad Commission v. Brown Express, Tex. Civ.App., 106 S.W.2d 327; Georgia Public Service Com. v. United States, 283 U.S. 765, 51 S.Ct. 619, 75 L.Ed. 1397; Baltimore & O. Railroad Co. v. United States, 304 U.S. 58, 58 S.Ct. 767, 82 L.Ed. 1148; United States ex rel. Delaware & H. R. Corp. v. Interstate Commerce Com., 60 App.D.C. 83, 51 F.2d 429. However, in the instant case appellants were permitted to file a motion for rehearing and to present oral argument thereon, which motion after being considered by the Commission was overruled.

■ Appellants further contend that if this court holds that the filing of the motion for rehearing and the action of the Commission thereon retained its jurisdiction over the subject matter until its order of January 12, 1939, then, on January 19, 1939, the Commission granted a second motion for rehearing, which set aside the order of January 12, 1939, and therefore left the application in Docket No. 2126 pending before the Commission for further proceedings. This contention is predicated upon the fact that appellants, after the final order of January 12, 1939, filed a second motion for a rehearing; and introduced in evidence an order, dated January 19, 1939, purporting to have been signed by Commissioners Thompson and Sadler, granting this second motion for a rehearing. On this order the name of Sadler had been obliterated by ink lines drawn through it, and underneath was written, in the handwriting of Commissioner Sadler, the words, "Signature withdrawn S." These facts sustain the finding and conclusion of the trial court that the instrument

or order referred to "was never intended nor entered as an order of the Railroad Commission."

In any event, it appears that the Commission made a docket entry on January 26, 1939, denying the second motion for a rehearing, and on the same day issued the certificate of convenience and necessity to Red Arrow authorizing the service in question. This concluded the matter so far as concerned the Commission.

The judgment of the trial court is affirmed.

Affirmed.